1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ELI LOPEZ, JR.,

11            Plaintiff,                    No. CIV S-09-0443 DAD

12        vs.

13   MICHAEL J. ASTRUE,                     ORDER
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16            This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is denied, defendant's motion is

19   granted, and the decision of the Commissioner of Social Security (the Commissioner) is

20   affirmed.

21                              **PROCEDURAL BACKGROUND**

22            On January 26, 2006, plaintiff Elias Lopez, Jr. applied for disability benefits under

23   Title II of the Social Security Act (the Act) alleging that he became disabled on April 30, 2004.

24   (Transcript (Tr.) at 81-96.)  Plaintiff claimed disability based on right shoulder replacement, left

25   shoulder chronic arthritis, arthritis in right knee, and back pain.  (Tr. at 85.)  On June 7, 2006,

26   plaintiff's application for disability benefits was denied.  (Tr. at 94.)   He did not appeal the

                                                 1

denial, but in February 2007, his case was reopened and a partially favorable disability onset date was determined.  (Tr. at 100-10.)  On July 31, 2007, plaintiff received a notice of award informing him that he was entitled to monthly disability benefits beginning May 2006 based on a finding that he became disabled on November 7, 2005, upon reaching the age of 50.  (Tr. at 48-53.)  Plaintiff requested reconsideration of the decision solely as to onset date, arguing that he had been disabled since April 30, 2004.[1]  (Tr. at 46.)  On October 18, 2007, upon reconsideration, plaintiff was found to be not disabled.  (Tr. at 41-45.)  Pursuant to plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on April 15, 2008.  (Tr. at 39, 361-93.)  Plaintiff, represented by counsel, testified at the hearing.  (Tr. at 361-62.)  In a decision issued on July 23, 2008, the ALJ found plaintiff not disabled.  (Tr. at 13-21.)  The ALJ entered the following findings:

> 1.  The claimant last met the insured status requirements of the Social Security Act March 31, 2008.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 30, 2004 through his date last insured of March 31, 2008 (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3.  Through the date last insured, the claimant had the following severe impairments: degenerative arthritis affecting the bilateral shoulders and only mildly affecting the right knee; status post total replacement arthoplasty [sic] of the right shoulder in August 2004 (20 CFR 404.1520(c)).
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the

---

[1]  The Notice of Award form advises the claimant of his right to appeal if he disagrees with the decision.  The form indicates that, on appeal, a person who did not make the first decision reviews the parts of the decision alleged to be wrong, considers any new facts, and corrects "any mistakes."  The form cautions the claimant that the agency will "review those parts [of the decision] which you believe are correct and may make them unfavorable or less favorable" to the claimant.  (Tr. at 51.)

1  residual functional capacity to perform light work except [sic].

2  6.  Through the date last insured, the claimant was unable to
   perform his past relevant work (20 CFR 404.1565).
3

4  7.  The claimant was born on November 8, 1955 and was 52 years
   old, which is defined as an individual approaching advanced age,
   on the date last insured (20 CFR 404.1563).
5

6  8.  The claimant has at least a high school education and is able to
   communicate in English (20 CFR 404.1564).

7  9.  Transferability of job skills is not material to the determination
   of disability because using the Medical-Vocational Rules as a
8  framework supports a finding that the claimant is "not disabled,"
   whether or not the claimant has transferable job skills (See SSR
9  82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10  10.  Through the date last insured, considering the claimant's age,
    education, work experience, and residual functional capacity, there
11  were jobs that existed in significant numbers in the national
    economy that the claimant could have performed (20 CFR
12  404.1560(c) and 404.1566).

13  11.  The claimant was not under a disability as defined in the
    Social Security Act, at any time from April 30, 2004, the alleged
14  onset date, through March 31, 2008, the date last insured (20 CFR
    404.1520(g)).
15

16  (Tr. at 15-20.)

17          On December 19, 2008, the Appeals Council denied plaintiff's request for review

18  of the ALJ's decision, thereby making that decision the final decision of the Commissioner.  (Tr.

19  at 5-9, 350-53.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the

20  complaint in this action on February 16, 2009.

21                              **LEGAL STANDARD**

22          The Commissioner's decision that a claimant is not disabled will be upheld if the

23  findings of fact are supported by substantial evidence in the record as a whole and the proper

24  legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

25  (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

26  The findings of the Commissioner as to any fact, if supported by substantial evidence, are

conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

(1971)).

A reviewing court must consider the record as a whole, weighing both the

evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

substantial evidence supports the administrative findings, or if there is conflicting evidence

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d

1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the

five-step sequential evaluation process established under Title 20 of the Code of Federal

Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?
> If so, the claimant is found not disabled.  If not, proceed to step
> two.

> Step two:  Does the claimant have a "severe" impairment?  If so,
> proceed to step three.  If not, then a finding of not disabled is
> appropriate.

> Step three:  Does the claimant's impairment or combination of
> impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App. 1?  If so, the claimant is automatically
> determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If
> so, the claimant is not disabled.  If not, proceed to step five.

1

2

Step five:  Does the claimant have the residual functional capacity
to perform any other work?  If so, the claimant is not disabled.  If
not, the claimant is disabled.

3    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

4    The claimant bears the burden of proof in the first four steps of the sequential

5    evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

6    sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

7    (9th Cir. 1999).

8                                **APPLICATION**

9    Plaintiff advances three arguments in support of his motion for summary

10   judgment.  First, plaintiff asserts that the ALJ failed to properly credit the opinions of his treating

11   physician without a legitimate basis for so doing.  Second, plaintiff contends that the ALJ failed

12   to properly evaluate and credit plaintiff's own statements regarding the nature and extent of his

13   pain and functional limitations.  Third, plaintiff argues that the ALJ failed to properly assess

14   plaintiff's residual functional capacity (RFC) and failed to find him disabled pursuant to the

15   medical-vocational rules (the grids).  The court addresses each argument below.

16   **I.    Whether the ALJ Failed to Properly Credit the Opinions of Plaintiff's Treating**

17   **Physician**

18   It is well established that the weight to be given to medical opinions depends in

19   part on whether they are proffered by treating, examining, or non-examining professionals.

20   Lester, 81 F.3d at 830.  "As a general rule, more weight should be given to the opinion of a

21   treating source than to the opinion of doctors who do not treat the claimant . . . ."  Id.  A treating

22   doctor is employed to cure and has a greater opportunity to know and observe the patient as an

23   individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894

24   F.2d 1059, 1063 (9th Cir. 1990).  Of course, the ALJ need not give controlling weight to

25   conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111,

26   1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

5

"At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester, 81 F.3d at 830 (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). If a treating professional's opinion is contradicted by an examining professional's opinion that is supported by different, independent clinical findings, the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751). The opinion of a non-examining professional, without other evidence, is an insufficient basis for rejecting the opinion of either a treating or examining professional. Lester, 81 F.3d at 831.

"When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. (citations omitted).

Plaintiff argues that the ALJ failed to properly credit the opinion of George Scarmon, M.D., who had treated plaintiff for many years. Plaintiff states that Dr. Scarmon found plaintiff limited to (1) lifting/carrying five to ten pounds for less than one hour in an 8-hour workday; (2) standing and/or walking for no more than three to four hours in an 8-hour workday, but only one to two hours without interruption; and (3) sitting three to four hours in an 8-hour workday, but only one to two hours without interruption. (Doc. No. 23, Pl.'s Mot. for Summ. J. at 21 (citing tr. at 223-24).) Dr. Scarmon opined that plaintiff's impairments also affected his ability to reach, handle, push, and pull, and precluded him from bending, stooping, kneeling, crawling, and working at heights or with moving machinery. (Id. (citing tr. at 224).)

1    Plaintiff contends that the ALJ gave little weight to Dr. Scarmon's opinions on the

2    stated ground that the opinions were too extreme and not consistent with the clinical findings in

3    his own records nor supported by the objective evidence of record.  (Id. (citing tr. at 18).)

4    Plaintiff contends that the ALJ claimed erroneously that Dr. Scarmon premised the restrictions

5    on plaintiff's ability to sit, stand, and walk solely on plaintiff's knee condition, when in fact Dr.

6    Scarmon stated that plaintiff was unable to work "due to the combined effects of his severe

7    bilateral shoulder impairments, bilateral knee arthritis, and low back pain" and "[t]hese prevented

8    him for sitting, standing, walking more than one hour without changing positions and greatly

9    limited his ability to do pushing, pulling, over-head reaching or lifting of ten pounds or more."

10   (Id. (citing tr. at 18, 214).)  Plaintiff argues that Dr. Scarmon's opinion of plaintiff's functional

11   limitations is supported by his treatment notes and is consistent with the evidence as a whole.

12   (Id. at 21-23.)  Plaintiff concludes that the ALJ should have credited Dr. Scarmon's opinion and

13   given it controlling weight, instead of crediting the opinions of one-time examining physicians

14   who based their conclusions on the same diagnostic, clinical, and objective evidence relied upon

15   by Dr. Scarmon.  (Id. at 24.)

16   The weight given to Dr. Scarmon's opinion of plaintiff's functional limitations is

17   important because, if Dr. Scarmon's opinion is given controlling weight, plaintiff does not have

18   the residual functional capacity to perform light work.  Light work, as defined in the Dictionary

19   of Occupational Titles and in the Commissioner's regulations,

> involves lifting no more than 20 pounds at a time with frequent
> lifting or carrying of objects weighing up to 10 pounds at a time.
> Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or
> when it involve sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable of
> performing a full or wide range of light work, [the claimant] must
> have the ability to do substantially all of these activities.  If
> someone can do light work, we determine that he or she can also
> do sedentary work, unless there are additional limiting factors such
> as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Here, it is undisputed that the ALJ gave "little weight" to Dr. Scarmon's opinions as presented in four documents:  (1) a two-page form "Medical Source Statement - Physical," unsigned and undated, but attached to an agency form letter dated February 9, 2007 requesting that Dr. Scarmon complete the form; (2) a one-page "To Whom It May Concern" letter dated September 6, 2007; (3) a two-page form "Medical Assessment of Ability to Do Work-Related Activities (Physical)" dated March 31, 2008; and (4) a two-page "To Whom It May Concern" letter dated May 12, 2008.  (Tr. at 18 (citing tr. at 190-91, 214, 223-24, 227-28).)  On the basis of these documents, the ALJ found that, in Dr. Scarmon's opinion, plaintiff's combined bilateral shoulder and knee impairments gave rise to the following limitations on plaintiff's functional abilities:  a restriction to lifting and carrying between 5-10 pounds occasionally with both hands, and less than 5 pounds with the right hand; a restriction on overhead reaching with the right arm except in emergencies; less than occasional pushing and pulling bilaterally; less than occasional reaching bilaterally; less than occasional manipulative activities; the need to alternately change positions every half hour between sitting, standing, and walking; the need to avoid any kneeling, stooping, or bending; and the need to avoid working in cold or humid environments.  (Tr. at 18.)

The ALJ found Dr. Scarmon's restrictions too extreme, not consistent with the doctor's own clinical findings, and not supported by the objective evidence of record.  As an example of extreme restrictions not supported by the record, the ALJ noted that Dr. Scarmon imposed extreme restrictions on plaintiff's ability to sit, stand and walk on the basis of plaintiff's knee condition, despite evidence that plaintiff's knee condition is mild.  (Tr. at 18.)  Although plaintiff argues that the ALJ mistakenly believed that Dr. Scarmon premised restrictions solely on plaintiff's knee condition, Dr. Scarmon did in fact premise extreme restrictions on plaintiff's ability to sit, stand and walk in his opinion dated May 12, 2008, stating that plaintiff's combined shoulder and knee conditions imposed restrictions on lifting, carrying, reaching, pulling, and pushing, while "[t]he knee condition results in an inability to stand, walk or sit more than 1/2 hour without changing position."  (Tr. at 18 (citing Exhibit 18F/2 [tr. at 228]).)

1          The record reflects that Dr. Scarmon's opinions are conclusory and contain

2    inconsistencies that cast doubt on some of the restrictions imposed.  The two form opinions are

3    conclusory in that both forms require explanations of the medical findings that support each

4    assessment, but few or no explanations were provided by Dr. Scarmon.  (Tr. at 190-91, 223-24.)

5    As an example of inconsistencies, the court notes that on the undated form requested by the

6    agency in February 2007, a box was checked to indicate that the patient needs alternate standing

7    and sitting, but the next box was also marked, indicating that breaks and lunch periods provide

8    sufficient relief for the need to alternate standing and sitting.  (Tr. at 190.)  In September 2007,

9    however, Dr. Scarmon opined that the combined effects of plaintiff's impairments as they had

10   existed in 2004 prevented plaintiff from sitting, standing or walking more than one hour without

11   changing positions, and in May 2008 Dr. Scarmon opined that plaintiff's knee condition resulted

12   in inability to stand, walk or sit more than half an hour without changing position.  (Tr. at 214,

13   228.)  Similarly, Dr. Scarmon opined in the undated 2007 form that plaintiff's impairments did

14   not cause restrictions with respect to heights or moving machinery, while in March 2008 he

15   opined that restrictions on heights and moving machinery are caused by plaintiff's impairments.

16   (Tr. at 191, 224.)

17          The court finds that the ALJ did not simply reject a treating physician's well

18   supported opinion in favor of conclusory opinions by non-treating, non-examining state agency

19   physicians or in favor of one-time examining consultative physicians who based their

20   conclusions on the same diagnostic, clinical, and objective evidence relied upon by Dr. Scarmon.

21   Rather, the ALJ compared Dr. Scarmon's opinion with the opinions and treating records of

22   Norman Poppen, M.D., who was plaintiff's treating surgeon, and the opinions of two examining

23   physicians, Madelaine Aquino, M.D. and David Char, M.D., Ph.D., both of whom performed

24   complete orthopedic examinations of their own.  (Tr. at 18-19, 141-54, 156-63, 209-13.)  The

25   ALJ found that the opinions of Drs. Poppen, Aquino, and Char supported a conclusion that

26   plaintiff had the residual functional capacity to perform light work.  (Tr. at 18-19.)  The ALJ also

1   considered the opinion of consultative examiner Paul Kaplan, M.D., who conducted a full

2   neuromusculoskeletal evaluation of plaintiff in 2005, less than a year after plaintiff's right

3   shoulder surgery.  The ALJ found Dr. Kaplan's opinion generally consistent with the conclusion

4   that plaintiff has the residual functional capacity to perform light work except that Dr. Kaplan

5   assessed a ten-pound lifting limit, which the ALJ gave little weight.  (Tr. at 19, 137-40.)

6          The court finds that Dr. Scarmon's opinion of plaintiff's RFC was contradicted by

7   the opinions of the treating surgeon and three examining professionals.  While a treating

8   professional's opinion generally is accorded superior weight, if that opinion is contradicted by

9   the opinions of examining professionals (which are supported by different independent clinical

10  findings, as they were here), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

11  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

12  Here, the ALJ resolved the conflict by providing specific and legitimate reasons for ejecting the

13  extreme assessments included in Dr. Scarmon's opinion of plaintiff's RFC.  See Lester, 81 F.3d

14  at 830.  Accordingly, plaintiff is not entitled to summary judgment on his first argument.

15  **II.    Whether the ALJ Failed to Properly Evaluate and Credit Plaintiff's Statements**

16          Once a claimant has presented medical evidence of an underlying impairment, the

17  ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely

18  because the symptoms are unsupported by objective medical evidence.  Reddick v. Chater, 157

19  F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

20  Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only

21  by offering specific, clear and convincing reasons for doing so.'"  Light, 119 F.3d at 792 (quoting

22  Smolen, 80 F.3d at 1281.  In evaluating a claimant's subjective testimony regarding pain and the

23  severity of his symptoms, the ALJ may, of course, consider the presence or absence of supporting

24  objective medical evidence, along with other factors.  Bunnell v. Sullivan, 947 F.2d 341, 346

25  (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1285.  However, absent affirmative evidence of

26  malingering, the reasons for rejecting a claimant's testimony must be specific, clear and

1  convincing.  Lingenfelter v. Astrue, 504 F.3d 1023, 1035-36 (9th Cir. 2007); Smolen, 80 F.3d at

2  1281; Morgan, 169 F.3d at 599.

3         Questions of credibility and the resolution of conflicts in the testimony are usually

4  deemed functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  The determination of

5  credibility is said to be a function of the ALJ acting on behalf of the Commissioner.  Saelee v.

6  Chater, 94 F.3d 520, 522 (9th Cir. 1996).  In general, an ALJ's assessment of credibility should

7  be given great weight.  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  The ALJ may

8  employ ordinary techniques of credibility evaluation and may take into account prior inconsistent

9  statements or a lack of candor by the witness.  Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir.

10  1989).  The ALJ cannot, however, substitute his or her own observations for medical diagnosis.

11  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

12         The ALJ found that plaintiff's medically determinable impairments could

13  reasonably be expected to produce symptoms such as pain but determined that plaintiff's

14  statements concerning the intensity, persistence and limiting effects of his symptoms were not

15  credible to the extent that they were inconsistent with the RFC assessment that plaintiff is

16  capable of performing light work.  (Tr. at 17.)  The ALJ discredited plaintiff's testimony of

17  limitations inconsistent with light work in part on the grounds that the significant limitations

18  alleged by plaintiff were not consistent with his daily activities or with the objective evidence.

19  The ALJ also cited plaintiff's generally conservative medical treatment, his failure to show a

20  need for special accommodations – such as special breaks or positions – to relieve his pain or

21  other symptoms, the lack of evidence of consequences such as weight loss or sleep deprivation as

22  a result of pain, and plaintiff's healthy appearance at the hearing.  (Tr. at 17-18.)  Plaintiff argues

23  that the ALJ failed to make specific findings stating clear and convincing reasons for rejecting

24  his testimony.

25         The court finds that the ALJ made specific findings in support of his reasons for

26  rejecting plaintiff's statements to the extent that those statements asserted limitations inconsistent

1   with the ability to perform light work.  The reasons given by the ALJ are based on consideration

2   of matters the ALJ is permitted to consider.  See 20 C.F.R. § 404.1529(a) ("We will consider all

3   of your statements about your symptoms, such as pain, and any description you . . . may provide

4   about how the symptoms affect your activities of daily living and your ability to work."); Batson

5   v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the ALJ

6   properly relied on objective medical evidence and medical opinions in determining credibility);

7   Meanel, 172 F.3d at 115 (noting that a likely consequence of debilitating pain is inactivity and

8   that a likely consequence of inactivity is muscular atrophy); Johnson v. Shalala, 60 F.3d 1428,

9   1434 (9th Cir. 1995) (holding that the ALJ may consider the conservative nature of treatment in

10  evaluating a claimant's subjective complaints); Bunnell, 947 F.2d at 346-47 (including

11  effectiveness of medication, treatment other than medication, the claimant's daily activities, and

12  ordinary techniques of credibility evaluation among the factors that may be considered by the

13  ALJ in assessing the credibility of allegedly disabling subjective symptoms).

14          The reasons given by the ALJ are sufficiently specific that this court is able to

15  conclude that the ALJ rejected plaintiff's statements on permissible grounds and did not

16  arbitrarily discredit plaintiff's testimony regarding his subjective symptoms.  The reasons are

17  clear and, because they are properly supported by the record, convincing.  On this record,  the

18  court finds that plaintiff is not entitled to summary judgment on his claim that the ALJ

19  improperly rejected his statements concerning his symptoms and the intensity, persistence, and

20  limiting effects of pain.

21  **III.     Whether the ALJ Failed to Properly Assess Plaintiff's RFC and Failed to Find Him**

22  **Disabled Based on the Medical-Vocational Rules**

23          A claimant's RFC is "the most [the claimant] can still do despite [his or her]

24  limitations."  20 C.F.R. § 404.1545(a).  The assessment of RFC must be "based on all the

25  relevant evidence in [the claimant's] case record."  Id.  See also Mayes v. Massanari, 276 F.3d

26  453, 460 (9th Cir. 2001).  The Commissioner may satisfy his burden of showing that the claimant

1   can perform past relevant work or other types of work in the national economy, given the

2   claimant's age, education, and work experience, by applying the Medical-Vocational Guidelines,

3   if appropriate, or by taking the testimony of a vocational expert.  Burkhart, 856 F.2d at 1340;

4   Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988).

5            "The grids are an administrative tool the Secretary may rely on when considering

6   claimants with substantially uniform levels of impairment."  Burkhart, 856 F.2d at 1340.  The

7   grids reflect "major functional and vocational patterns" and incorporate the analysis of critical

8   vocational factors, i.e., age, education, and work experience, in combination with the individual's

9   residual functional capacity.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a).  The grids may be

10  utilized when they "'accurately and completely describe the claimant's abilities and limitations.'"

11  Burkhart, 856 F.2d at 1340 (quoting Jones, 760 F.2d at 998).  "When a claimant's nonexertional

12  limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the

13  claimant's exertional limitations, the grids are inapplicable. . . .  In such instances, the Secretary

14  must take the testimony of a vocational expert and identify specific jobs within the claimant's

15  capabilities."  Burkhart, 856 F.2d at 1340 (quoting Desrosiers v. Sec'y of Health & Human

16  Servs., 846 F.2d 573, 577 (9th Cir. 1988)).  See also Aukland v. Massanari, 257 F.3d 1033, 1035

17  (9th Cir. 2001) (holding that "an ALJ may rely solely on the Medical-Vocational Guidelines (the

18  'grids') only when a claimant can perform the full range of applicable work" and the ALJ erred

19  in failing to obtain the testimony of a vocational expert).

20           Here, the court has found that the ALJ properly rejected Dr. Scarmon's opinions

21  assessing extreme functional limitations.  Relying upon the opinions of the treating surgeon,

22  several consultative examiners who performed complete evaluations of plaintiff, and the whole

23  record, the ALJ concluded that plaintiff could not perform his past relevant work but had the

24  RFC to perform light work.  Given plaintiff's nonexertional limitations, the ALJ appropriately

25  requested testimony from a vocational expert and posed a series of hypothetical questions.  The

26  vocational expert testified that plaintiff perform work as a parking lot attendant, officer helper,

1   and telephone quotation clerk, with significant numbers of these jobs available in the national

2   and regional economies.  The court therefore finds that plaintiff is not entitled to summary

3   judgment on his claim that the ALJ erred in failing to find him disabled based on the grids.

4                                                **CONCLUSION**

5               In accordance with the above, IT IS HEREBY ORDERED that:

6               1.  Plaintiff's motion for summary judgment (Doc. No. 23) is denied;

7               2.  Defendant's cross-motion for summary judgment (Doc. No. 27) is granted; and

8               3.  The decision of the Commissioner of Social Security is affirmed.

9   DATED: September 29, 2010.

10

11  _____

12  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

13  DAD:kw
    Ddad1\orders.socsec\lopez0443.order
14

15

16

17

18

19

20

21

22

23

24

25

26